Good morning, Your Honors. Patrick Linden on behalf of the Appellant Jim Vanderbilt. May it please the Court. The purpose of a prosecutor's absolute immunity is to protect prosecutorial decision-making and, most importantly, protecting the interests of the public in a criminal prosecution from that process being distorted by the potential risk of future civil liability in a later action brought by the agreed criminal defendant. A prosecutor must be free to make a decision on what evidence to present at a criminal trial. Here, in denying Defendant Vanderbilt's motion to dismiss, the district court eroded that immunity and the district court should have either granted Defendant Vanderbilt's motion to dismiss as a whole or at least narrowed the plaintiff Bledsoe's claim to those that fell outside of the scope of absolute prosecutorial immunity. When does absolute prosecutorial immunity attach? Both this Court and the U.S. Supreme Court have adopted a functional analysis, so I think the absolute prosecutorial immunity attaches at the moment the prosecutor begins functioning in a prosecutorial role. In other words, engaging in actions that are, as I believe the terminology is, intimately associated with the judicial process of the prosecution. So, arguably, in terms of the typical chronology of a criminal prosecution, at the stage the prosecutor, I would say, is approaching a charging decision, for example. Approaching or when there's already probable cause to make that charging decision? Well, I think that process of establishing probable cause is a process and that the prosecutor's decision-making process in deciding whether there is probable cause to move forward is a prosecutorial function that's associated with the judicial process. So do you say that in the context of people bringing the prosecutor information or the prosecutor developing his or her own information? I think there's some aspects of both of that. Certainly, the prosecutor has his own role as to independently decide whether or not there is a basis to bring charges or to proceed. But also, the prosecutor, especially in a small jurisdiction as we have here in Jefferson County, Kansas, there is, I think by just a matter of fact, some exchange of information at times, at various stages. Police officers may ask the county attorney, hey, what should we do in this situation? We've got a complex criminal investigation that is beginning. So at that point, if a police officer comes to your client and says, we're beginning a complex investigation, does it attach them? If we're purely at the investigative stage, I think the functional analysis would probably weigh in favor of that still being as an investigative role. Again, you look at the function being performed, not necessarily who is performing it. And if we were to conclude that the complaint alleges the prosecutor participated in traditionally detective investigative functions under Buckley, this would not be an absolute immunity case, would it? I think it's a little more complicated than that, especially in light of some more recent case law from this circuit. Well, this circuit can't overrule Buckley, can we? It can't overrule Buckley. But Buckley was a case where the non-prosecutory actions involved both investigative functions and statements to the press. And our argument would be that Buckley stands on a little bit different footing because the damages that appear to be at issue there were damages arising during the investigative phase, not necessarily from the trial phase of the procedure. Buckley also, as well, did not ultimately result in a conviction. This is your argument that because it wasn't until he used the allegedly fabricated evidence at trial that harm arose that we have to apply absolute immunity. Is that correct? In part. But I think my argument is also more that the damages that plaintiff is seeking that are specifically alleged in the complaint, and the plaintiff being the master of the complaint has specifically focused those damages on the use of the testimony at trial, securing the alleged wrongful conviction, and the incarceration that flowed therefrom. There are not damages pleaded within the four corners of the complaint, as I read it, related to either a wrongful initiation of criminal proceedings against Mr. Bledsoe or a wrongful arrest, wrongful investigation, any of those type claims. So that's where I think the tension is. I didn't – Go ahead. You go ahead. I'm going to defer to my newest colleague. Well, his – I mean, his damages, you know, occurred later but flow from the earlier conduct that he alleges. I mean, there's no way he can be damaged earlier. I would disagree. What are his damages for what your client allegedly did in investigating him before there was any prosecution or charging? If this alleged scheme as it was took place, it would be focusing the – guiding and focusing the investigation on Mr. Bledsoe. In the Buckley scenario – Well, let me ask you to assume something. So assume that the allegations are correct, that your client orchestrated this whole scheme against Mr. Bledsoe and went out and got his brother to change his testimony and to point the finger at Mr. Bledsoe, and then all of a sudden they decided they weren't going to do anything with it. What are his damages? The damages at that point would probably be nominal, especially if there was not, as there was in Buckley, a statement to the press about the evidence where there were other damages associated with it. But I think there was a risk – I don't know about the – on the statement to the press. And, in fact, the Supreme Court said, a prosecutor may not shield his investigated work with the aegis of absolute immunity merely because after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as preparation for a possible trial. I mean, it seems to me the Supreme Court in Buckley said you can't do what you're trying to do, which is to say the damage didn't flow from the fabrication of evidence and when he used the fabricated evidence at trial, he suddenly had absolute immunity to use it. Well, it is true that Buckley did not focus its analysis on damages. I think some of the case law that's flowed out subsequently have tried to deal with that dichotomy that, Judge McHugh, you're attempting to hone in on here. Certainly, an argument could be made that the fabrication of testimony during the investigative phase could lead to damages at some later point in a criminal proceeding. However, it is difficult to reconcile that approach with the very clear case. So it also says that a prosecutor can put forward even perjured testimony and still be shielded by absolute immunity. So I think the way to distinguish those – I think the way to distinguish those cases is that the prosecutor did not participate in the traditional investigative process that the police typically does. Those cases are – it's – you said you focus on function. Those are cases where maybe even the prosecutor knows that the evidence that's been delivered to him, as my colleague pointed out when evidence is delivered, is not – is not truthful and uses it anyway. You're right. Absolute immunity because we're in the traditional prosecutorial function. But the allegations in this complaint are about participation in the detective's investigation. And that's where I think the difficulty is in this case, because adopting that analysis and saying that if you simply plead that there was some involvement at the investigative stage, it would be essentially – it essentially sidesteps absolute immunity entirely because it is probably the rare criminal prosecution where a prosecutor is not involved at some point in the investigation. But you've got more than that here, though. You've got – you've got the allegation being that, I mean, your client directed the change in story and the fingering of Mr. Bledsoe. I mean, that's more than just some tangential participation in the investigation. Well, I'm not sure I would go so far to say that the complaint says that Vanderbilt directed. I think it says that he was a participant in the conspiracy. And that also there's an alternative argument that Vanderbilt was not privy to the investigation. The suicide note's sort of an integral part of the complaint, isn't it? They are an unusual fact here. I question the invisibility. And it says that your client made me do it? Well, the client and the sheriff's department made me do it. Right. So it's not just directed solely at my client. But certainly I think there's also a question ultimately of the invisibility of that evidence. But that's obviously a question for much later. Right. Right now we take all the allegations of the complaint as true. This is true. The well-pleaded complaints must be accepted as true. And the reasonable inferences from them. That is correct. So what is your best case? There's actually a new 10th Circuit case, Warnick v. Cooley, 895 F3rd 746, pinpoint site 751. That's a July 9, 2018 decision. It doesn't speak directly to our issues. But it does provide, hone in on some of this analysis I'm talking about here. And you didn't cite this? No, this was after briefing. So why don't you send us a 28-J letter on that? Certainly. In that decision, another panel of this court said that while prosecutors may not enjoy absolute immunity for activities unrelated to advocacy, that does not mean that engaging in such activities removes their immunity for activities that are related to advocacy. Absolute immunity is not, quote, subject to all or nothing application, close quote. It can apply to some of the prosecutor's actions while not to others at the same time. So I think that we're This is just saying that you look function by function. This is true, but I think it also speaks to you have to look at what flows directly from that conduct. That if it is conduct of function that is absolutely immune, then in that circumstance, you should apply absolute immunity. If it is damages that have flowed directly from investigative conduct, but not from the absolutely immunized conduct, then you deny the motion to dismiss on the basis of absolute immunity, but your exposure is constrained, essentially. And I think what Judge Carson was saying was if you look at this, the injury flows from, again, taking allegations of the complaint as true, we have no idea if they can be proved, that the damage flows from the participation in the trumped-up investigation. Our argument would be that the damages in this case flow not from the investigation, but instead the use of the testimony at trial. Why doesn't that fly directly in the face of the Supreme Court's direction in Buckley? I think you have to look at Buckley in terms of the case that has also evolved since, and trying to balance the how you still apply absolute immunity to the prosecutorial functions when prosecutors also engage from time to time in investigative activities. And I think the way you reconcile those two approaches is to look at what damages flow directly from the conduct and imminently from the conduct, not what may happen months or years down the line. If it pleases the Court, I would like to reserve the remainder of my time for thought. Thank you. Good morning. I'm Russell Ainsworth, appearing on behalf of Floyd Bledsoe. And may it please the Court. I sent an innocent man to prison. The Jefferson County police and Jim Vanderbilt made me do it. I was told by Vanderbilt to keep my mouth shut. Those are Tom Bledsoe's words made in his suicide note. Those were Jim Vanderbilt's actions before probable cause. Those were Jim Vanderbilt's actions that sent Floyd Bledsoe on a 16-year nightmare of incarceration for a crime he did not commit. Tom Bledsoe raped and killed a 14-year-old girl. He confessed to that crime to his pastor, to his parents, to the police. He provided the police with the location of where her body was buried and private details about where she'd been shot in the back of her head. He provided the police with the murder weapon, which was his own gun. He was arrested. He was jailed. Over the next five days, according to the complaint, which this Court must take as true at this stage of the proceedings, Vanderbilt and the Jefferson County police and some KBI agents conspired to get Tom to falsely implicate Floyd for the crime. And five days later, that's exactly what happened. Tom pointed the finger at Floyd. Floyd was incarcerated. Tom was jailed. Floyd was then convicted. At the time, he was a 23-year-old man with no prior criminal convictions, and he was imprisoned. And let's not compound that tragedy by misapplying the law here, because the court is correct. Buckley controls here. And I just want to talk a little bit about Buckley and the specifics there, because it's the exact same situation as here. There was evidence alleged to have been fabricated by the prosecutor before probable cause attached. That evidence was then used to deprive Buckley of his liberty by presenting it to a grand jury and by trying him on those charges. And let it not escape this court that the same prosecutor who is alleged to have fabricated the evidence in Buckley, this is Knight. Fitzsimmons was also one of the defendants, but Knight was a respondent. He was a trial prosecutor. He introduced the evidence to the grand jury. He introduced the evidence at trial. Should that matter to us? Well, it matters because the exact same thing happens here, where Vanderbilt is now saying that, yes, even if I fabricated evidence before probable cause attached, things are different here because I was the trial prosecutor who introduced the evidence, and thus I am absolutely immune. What about the idea that he's a small-town prosecutor, that they don't have enough? I'm adding facts, but I think this was the gist of the argument, that they don't have enough resources, so the prosecutor has to maybe get his hands dirty in some investigation, too. What about that argument? Well, I think the opposite is true. Well, first, I mean, there's two responses. One, Burns says it doesn't matter. If you're doing what the police are doing, you are liable. If the police are liable for following your advice, you should be liable for giving that advice in the first place, so long as you're acting in an investigatory capacity. And if we're agreed, as we are here, that it's within an investigatory capacity, then it doesn't matter if you're a big-town or a small-town prosecutor. You know, if you're acting as an investigator, then that's it. But I think you also have to look at what are the effects on small and large prosecutorial departments with what Vanderbilt is suggesting here. In a large department or a large office, you may have one prosecutor who develops, fabricates the evidence and then hands it off to an unsuspecting colleague to prosecute. And in that circumstance, the fabricator is liable. But in a small department, which may have only one prosecutor in the whole place, if the prosecutor is involved in the fabrication, but then is the same person who tries the case, that person is not liable under Vanderbilt's rule. And that doesn't seem right. And to take it a step further, let's say Vanderbilt wasn't acting as the only prosecutor in this case. Let's say he was working in tandem with another prosecutor named Ainsworth. And Vanderbilt and Ainsworth both fabricate Tom's statement to implicate Floyd. But then Ainsworth drops out and Vanderbilt is the only one who takes it to trial. Should Vanderbilt be immunized because he forced the case to trial on his fabricated evidence while Ainsworth is left liable because he didn't participate in the trial? That's not what Buckley says. Buckley addressed this exact issue by saying, we look at the functional approach and we look then to see what is the foreseeable consequences of the constitutional wrong? Because since Kerry v. Pifus, this court is supposed to look at constitutional torts with the same analysis that you use in other court situations. So if you fabricate evidence and you make that available to prosecutors, is it a foreseeable outcome that the person is going to be held to charges and is going to be deprived of his liberty and could be deprived of his liberty for the rest of his life, depending on the case? That's the consequence. Let me ask you this. You've pled in the alternative about this conspiracy to fabricate evidence and to put the blame on your client. If we look at your alternative allegation, very likely absolute immunity would apply because in that allegation, Mr. Vanderbilt isn't involved in the conspiracy. He's just fed the evidence from the conspiracy. But in the other version of your complaint, we may conclude that he doesn't have absolute immunity. What do we do with that, where you've pled in the alternative? Well, under this Court's jurisprudence, a litigant can certainly plead in the alternative, and then it's for the factual record to be developed and for a trial to be had under one theory or the other. But at this stage in the proceedings, when you're talking about a motion to dismiss under Rule 12b-6, it is appropriate for this Court to accept the well-pleaded facts that are included in the version of the complaint, the alternative that implicates Vanderbilt in the pre-prosecutorial misconduct and holds him liable. And so should we grant him absolute immunity for your other alternative so that if the evidence comes in and you can't prove that he was involved in this investigative fraud, that he already has been granted absolute immunity? I don't think that question is before the Court. You know, I think that has to be ruled upon in the first instance by the district court. And the district court hasn't addressed what would happen if Vanderbilt was not part of the conspiracy and if he was not acting in investigatory capacity. Well, the district court didn't distinguish between the two theories. The district court just said he doesn't have absolute immunity, he only has qualified immunity. So, I mean, you know, I think it is before the Court. Well, I would – my response is that I agree that if Vanderbilt, under the facts, so either at summary judgment or at trial, is determined not to have been part of a conspiracy, then he is entitled to absolute immunity for actions that occur later. If he was part of the pre-probable cause conspiracy, which is what the complaint alleges. So even though there's two – Well, it's one thing that the complaint alleges. Yeah, but because the complaint – there's a set of facts that if they turn out to be true, then Vanderbilt's liable under that theory. Then we have sustained a cause of action against Vanderbilt. And so there's nothing for this Court to dismiss. You can't dismiss our actions against him under either Count 1 or Count 2 because there is a set of facts that would sustain the allegations in the complaint and make out a constitutional tort against him. Well, that's not right, is it? You can have a partial dismissal or a partial reversal finding that the district court should have dismissed, couldn't you? I think we have a constitutional tort for violation of due process against Jim Vanderbilt under Count 1. I don't think that this Court can partially dismiss Count 1. I suppose that this Court could say he's absolutely immune for acts that occurred after – Once he was working as a prosecutor. But that's not what this appeal concerns. And I want to still address that because it's true. I also want to just – in terms of Buckley, Buckley was talking about damages flowing from the initiation of criminal charges and Buckley's three-year incarceration in which he was tried, there was a mistrial, and then ten months later he was released. That was the grabment of the complaint. That was the constitutional harm that Buckley had suffered. And in response to Judge Carson's question, if Tom's statement had just been coerced but never used against Floyd, it's not that Floyd would be entitled to nominal damages, as the appellant suggests. There would be no constitutional tort at all. It would be, you know, not a nice thing to do. It may be a state law tort, but it's not a constitutional wrong unless it's then introduced into the criminal case. And so in every constitutional tort of this kind, you're going to have some implication of the judicial system. And simply because the judicial actor, the prosecutor, who is involved in that process is the same person who fabricates the evidence, that is not determinative of whether the prosecutor is entitled to absolute immunity. We must not conflate the immunity analysis with the tort analysis. The first step is, was there a tort that was committed? And here, a tort was committed when Vanderbilt coerced Tom Bledsoe to tell a false story against Floyd. And once that evidence was used against Floyd, a tort has been committed. And thus, the Jefferson County Police, Vanderbilt, have all committed a constitutional tort. Now we must look at, is he absolutely immune? And the answer is no. This court, in, for example, the Pierce v. Gilchrist decision, says that if you fabricate evidence and that evidence is then used in a criminal proceeding, then that is a due process violation. And in determining the absolute immunity for the prosecutor at this stage, you have to look at, was the prosecutor working as an investigator at the time of the misconduct? And court after court, having looked at this issue, have followed Buckley in lockstep. Your primary theory and your alternative theory are pled in the same count, correct? Yes. If your alternative theory had been pled in a separate count, and it was not dismissed by the district court, wouldn't it be appropriate for this court to reverse that decision on that count? Yes, that's exactly right. All right. And as I understand it, this case proceeded from a grand jury indictment? Yes, Judge. And the grand jury, so one would be a bright line to draw, is when you go from investigatory to prosecutorial, is when the investigation brings to the prosecutor the bundle of evidence and asks that prosecutor to seek an indictment. Well, what Buckley says is the bright line is that we don't quite know exactly what the bright line is after probable cause attaches. But before there is probable cause to suspect a person of committing a crime, any action that occurs before probable cause is pre-prosecutorial investigative activity. Well, as I understand it, it would be impossible for the prosecutor to have proceeded at least before November 12th with a grand jury against Floyd, correct? That's right. And without the fabricated evidence, they never would have been able to proceed to a grand jury against Floyd. All right. And Mr. Vanderbilt was involved before that. That's correct. And that's the focus. His conduct before that is the focus of your attention. Absolutely. If there was other evidence after that that was fraudulent, that may or may not involve Mr. Vanderbilt. Correct? That's right. All right. Thank you. We are asking this Court to affirm the lower court, and if there are no further questions, I'll cede my time to the Court. They don't appear to be. I've got a question for you when you're getting started here. So Judge McHugh was asking your opposing counsel about this idea of maybe a partial dismissal based on absolute immunity. Is that something that you raised in your opening brief? I believe it is discussed in – If you did, you can just tell me yes, and I'll find it later. I believe it is mentioned in the opening brief. It is in – starting on page 27 of the opening brief. Okay. And did you – I mean, did you make the argument in the manner that she was – brought it up? In terms of – That even if there was something pre-prosecutorial that, to the extent he alleges anything that happened in the prosecutorial function, that that can be severed and dismissed? I'm not sure it was put as finely as that. I think it was focused more upon the nature of, again, the damages issue and also what functions were being involved at the time. Certainly the alternative theories did come up to play, both in the lower court and I think in our briefing, that I think also creates some tension given that, as Judge Murphy pointed out, they're pleaded in the same count, that both Vanderbilt either was involved in the conspiracy and aware of what was going on, or alternatively that he wasn't aware of the fabrication of evidence and he was merely the recipient who carried the ball forward at trial. So I think there is some tension there that – and I agree that an approach would be appropriate, even if it's not pleaded in a separate count. I think you can divide up even a single count that way if the court determines that narrowing the allegations is appropriate. Did you directly tell the district court, no, you can separate these two items in the single count and do a partial dismissal on part of that count and not on the other part? I believe there was in terms of being able to narrow the claims. I'm not sure if it was expressly raised as splitting up count one. Well, you were primarily arguing that because they pleaded in the alternative, that the entire count had to have absolutely no evidence. That was our principal argument, yes. I think that might have been your only argument. I think maybe you didn't make the argument I'm making. I see my time is up. Just in closing, obviously, we don't necessarily agree with the facts that are pleaded. We may be back here at a summary judgment stage, but I appreciate the Court's time. Thank you. Thank you. We will take the matter under advisement. And thank you, counsel, for your help with this.